STATE OF NORTH CAROLINA v. ANTHONY DEVON HERRING

No. COA05-265

(Filed 7 March 2006)

**Homicide— felony murder—motion to dismiss—sufficiency of evidence—acting in concert—trafficking in cocaine while also possessing deadly weapon**

The trial court did not err by denying defendant's motion to dismiss the charge of felony murder based on the theory of acting in concert even though defendant contends there was insufficient evidence to support the underlying felony of trafficking in cocaine by possession of more than 400 grams of cocaine while also possessing a deadly weapon, because: (1) defendant may not have intended to join his cousin in shooting and killing the victim on 18 August 2003, but defendant's intent is of little importance under the circumstances of acting in concert since as long as defendant joined with his cousin in committing a crime, he is responsible for all other crimes committed in a single transaction that are in furtherance of the common purpose or plan; (2) the common plan in the instant case was to obtain or facilitate the

**STATE v. HERRING**

[176 N.C. App. 395 (2006)]

possession of cocaine, and evidence taken in the light most favorable to the State formed the basis that defendant and his cousin acted together to possess, or attempt to possess, the victim's cocaine; (3) the requisite common purpose for acting in concert is not necessarily the intent to commit the crime charged, rather it is sufficient if the crime charged is a natural occurrence of, or flows from a common criminal purpose; (4) defendant's knowledge that his cousin had a gun is irrelevant so long as the cousin killed the victim while possessing or attempting to possess the drugs in the apartment which the State substantially established was the common purpose; and (5) the evidence in the light most favorable to the State shows that the victim was shot and killed within moments of the cousin stepping into the apartment with the gun to complete his drug transaction.

Appeal by defendant from judgment entered 2 July 2004 by Judge James Spencer in Wake County Superior Court. Heard in the Court of Appeals 20 October 2005.

*Attorney General Roy Cooper, by Special Deputy Attorney General H. Dean Bowman, for the State.*

*Appellate Defender Staples Hughes, by Assistant Appellate Defender Anne M. Gomez, for defendant-appellant.*

ELMORE, Judge.

Anthony Herring (defendant) appeals from his judgment of conviction for felony murder arising from the death of Dexter Moore (Moore). The State proceeded to trial under the theory that Moore was killed by Ronald Russell (Russell), defendant's cousin, whom defendant was acting in concert with to rob Moore of his money or drugs. Since Moore's death occurred during the perpetration or attempted perpetration of a felony with the use of a deadly weapon, defendant was indicted for murder. *See* N.C. Gen. Stat. § 14-17 (2005).

In the light most favorable to the State, the evidence at trial showed that defendant and Moore knew each other for some time prior to the shooting. Defendant knew that Moore was a drug dealer and would often find buyers for Moore's drugs. Defendant agreed to "hook up" his cousin Russell with Moore so that Russell could purchase some drugs. Defendant and Russell met in Dunn, where defendant lived, and the two drove separately to the Raleigh apartment where Moore lived.

STATE v. HERRING

[176 N.C. App. 395 (2006)]

Defendant arrived first, and went upstairs to Moore's second-floor apartment where he and Moore watched television. Defendant testified that Moore placed a large amount of cocaine on the kitchen counter top. Defendant then got a call from Russell and went downstairs to meet him. When the two came back upstairs, Moore showed Russell the cocaine and they discussed the transaction. Defendant, who had returned to watching television, overheard Russell say he needed to go outside to get more money. Moore and defendant remained inside, and then Russell came back up the steps brandishing a gun and stating that the police were coming.

Defendant then testified that Russell and Moore began fighting over the drugs in Moore's hand. Defendant was ducking for cover, but tried to hide some cocaine he saw in the kitchen under a coat before hearing a gunshot and running downstairs to his car. He testified that he thought Russell was going to shoot him as well. A witness from the apartment complex testified that she heard several gunshots and saw two men leave Moore's apartment, one a bit of time after the other, and go to separate cars. The first man who left was carrying a bag and ducking down, as if he were going to be shot; the second man just went straight to his car.

Moore called his girlfriend, Kandrina Trollinger, and told her he was shot. He also said, "Anthony set me up." Moore died later as a result of gunshot wounds to the chest and right leg. Upon investigation, police determined that a large bag of cocaine, which was found on the kitchen floor near Moore, weighed 750.7 grams. There were several other bags of cocaine throughout the apartment, as well as $27,000.00 in cash in a shaving kit and a gun near the TV.

When presented with this evidence the jury determined defendant was guilty of felony murder, and that trafficking or attempted trafficking in cocaine with a deadly weapon was the underlying felony. The jury rejected the State's alternative theory that Moore's death was the result of an armed robbery or attempted armed robbery. The jury also found defendant guilty of a separate charge of trafficking in cocaine. The trial court sentenced defendant to life in prison without parole on the felony murder conviction and arrested judgment on the separate trafficking conviction.

Defendant appeals, arguing that the State presented insufficient evidence supporting the underlying felony of trafficking in cocaine with a deadly weapon and his motion to dismiss should have been granted. The State argues that when applying the theory of acting in

concert to the evidence, as was presented to the jury, there is sufficient evidence to support presentation of the charges. We agree.

Our review of the trial court's denial of a motion to dismiss is well understood. "[W]here the sufficiency of the evidence . . . is challenged, we consider the evidence in the light most favorable to the State, with all favorable inferences. We disregard defendant's evidence except to the extent it favors or clarifies the State's case." *State v. James*, 81 N.C. App. 91, 93-94, 344 S.E.2d 77, 79-80 (1986).

> Whether the evidence presented is direct or circumstantial or both, the test for sufficiency is the same. . . . 'Circumstantial evidence may withstand a motion to dismiss and support a conviction even when the evidence does not rule out every hypothesis of innocence.' . . . If the evidence supports a reasonable inference of defendant's guilt based on the circumstances, then 'it is for the [jurors] to decide whether the facts, taken singly or in combination, satisfy them beyond a reasonable doubt that the defendant is actually guilty.'

*State v. Trull*, 349 N.C. 428, 447, 509 S.E.2d 178, 191 (1998) (internal citations omitted); *see also State v. Campbell*, 359 N.C. 644, 681-82, 617 S.E.2d 1, 24 (2005).

"All that is required to support convictions for a felony offense and related felony murder 'is that the elements of the underlying offense and the murder occur in a time frame that can be perceived as a single transaction.' *Trull*, 349 N.C. at 449, 509 S.E.2d at 192 (quoting *State v. Thomas*, 329 N.C. 423, 434-35, 407 S.E.2d 141, 149 (1991).). Here, the underlying offense was trafficking in cocaine by possession of more than 400 grams of cocaine while also possessing a deadly weapon. In order for the State's evidence to withstand a motion to dismiss it must show that defendant possessed more than 400 grams of cocaine and a weapon. Defendant does not dispute that the cocaine found in the kitchen weighed more than 400 grams; however, he does dispute that he or Russell had possession of it.

To show possession, the State must provide substantial evidence that: 1) defendant had actual possession; 2) defendant had constructive possession; or 3) defendant acted in concert with another to commit the crime. *State v. Garcia*, 111 N.C. App. 636, 639-40, 433 S.E.2d 187, 189 (1993) (citing *State v. Diaz*, 317 N.C. 545, 552, 346 S.E.2d 488, 493 (1986), *overruled on other grounds by State v. Hartness*, 326 N.C. 561, 566, 391 S.E.2d 177, 180 (1990)). There is no

contention by the State that defendant had actual or construc-
tive possession of the cocaine; instead, it contends that *Russell*
trafficked in cocaine with a deadly weapon, presumptively by con-
structively possessing the drugs, and since defendant acted in con-
cert with Russell then defendant is guilty of the felony as well. We
ultimately agree.

The doctrine of acting in concert was clarified by our Supreme
Court in *State v. Barnes*, 345 N.C. 184, 233, 481 S.E.2d 44, 71 (1997).

> [I]f two persons join in a purpose to commit a crime, each of
> them, if actually or constructively present, is not only guilty as
> a principal if the other commits that particular crime, but he is
> also guilty of any other crime committed by the other in pur-
> suance of the common purpose . . . or as a natural or prob-
> able consequence thereof.

*State v. Westbrook*, 279 N.C. 18, 41-42, 181 S.E.2d 572, 586 (1971),
*quoted in State v. Erlewine*, 328 N.C. 626, 637, 403 S.E.2d 280, 286
(1991), *quoted in Barnes*, 345 N.C. at 233, 481 S.E.2d at 71. Defendant
may not have intended to join Russell in shooting and killing Moore
on 18 August 2003, but his intent is of little importance under the cir-
cumstances of acting in concert. *See State v. Barrett*, 343 N.C. 164,
174-76, 469 S.E.2d 888, 894-95 (1996) (In a prosecution for felony mur-
der under a concert of action theory, "[w]hether there is sufficient
evidence to show that the defendant either committed the killing him-
self, intended that the killing take place or even knew that the killing
would take place is irrelevant for purposes of determining defend-
ant's guilt under the felony murder rule.") (quoting *State v. Reese*, 319
N.C. 110, 145, 353 S.E.2d 352, 372 (1987)). As long as defendant joined
with Russell in committing *a* crime, he is responsible for all other
crimes committed in a single transaction that are in furtherance of
the common purpose or plan. *See Barrett*, 343 N.C. at 174-76, 469
S.E.2d at 894-95.

The common plan here is one to obtain or facilitate the posses-
sion of cocaine. In the case at bar, there is substantial evidence that
defendant knew Moore was a large scale drug dealer and had a
substantial amount of drugs and money at his apartment. Defendant
had gained Moore's trust by facilitating the sale of Moore's cocaine in
the past, and as such, Moore would allow defendant to come to his
apartment even though he had been previously robbed. The State
presented testimony of Darren Wright, a convicted felon incarcerated
with defendant, who said that defendant discussed details of the

crime with him. Wright testified that defendant and Russell met and "plotted" to rob Moore of his drugs and money and when Moore resisted Russell shot him. The two were startled and left the apartment without taking anything. Defendant admitted setting up the meeting between Moore and Russell when Russell was out on pretrial release for an armed robbery charge. And, when defendant arrived at Moore's apartment, defendant observed Moore bring out a large amount of cocaine to show Russell. He also saw that Moore had a gun near the TV. Finally, Moore's dying declaration to his girlfriend was that defendant "set him up." This evidence, taken in the light most favorable to the State, forms the basis that defendant and Russell acted together to possess, or attempt to possess, Moore's cocaine.

Defendant contends that evidence proffered by the State must support that he and Russell had a "common purpose" to actually commit the underlying felony; here, that he and Russell had a common purpose to traffic in cocaine by possession with a deadly weapon. This interpretation, however, is inapposite to our case law.

The theory of acting in concert, as properly defined by the trial court, requires a common purpose to commit a crime. *State v. Joyner*, 297 N.C. 349, 255 S.E.2d 390 (1979). Thus, before the jury could apply the law of acting in concert to convict the defendant of the crime of assault with a deadly weapon with intent to kill inflicting serious injury, it had to find that the defendant and Lynch had a common purpose to commit *a* crime; it is not strictly necessary, however, that the defendant share the intent or purpose to commit the particular crime actually committed.

*State v. Erlewine*, 328 N.C. 626, 637, 403 S.E.2d 280, 286 (1991), *overruling abrogated by State v. Barnes*, 345 N.C. 184, 233, 481 S.E.2d 44, 71 (1997). Therefore, the requisite common purpose for acting in concert is not necessarily the intent to commit the crime charged, rather it is sufficient if the crime charged is a natural occurrence of, or flows from a common criminal purpose. *See id.*; *Westbrook*, 279 N.C. at 41-42, 181 S.E.2d at 586.

Defendant's next argument is that the State needed to prove he knew that Russell possessed a gun in order to be convicted of trafficking in cocaine with a deadly weapon under a concert of action theory. We disagree. There is no dispute that Russell did have a gun and did in fact shoot and kill Moore. Defendant's knowledge that Russell had a gun is irrelevant so long as Russell killed Moore while

possessing or attempting to possess the drugs in the apartment, which the State substantially established was defendant and Russell's common purpose. *See State v. Johnson,* 164 N.C. App. 1, 12, 595 S.E.2d 176, 182 (2004) (citing *Erlewine,* this Court stated: "[w]hether or not defendant was aware that a gun was going to be used during the robbery is immaterial to whether he intended to participate in the robbery . . . ."); *Barrett,* 343 N.C. at 174-76, 469 S.E.2d at 894-95.

Defendant also contends that even if he acted in concert with Russell to traffic in cocaine, the State's evidence was insufficient to prove that *Russell* had actual or constructive possession of the cocaine at or during the time Moore was shot, thereby supporting his motion to dismiss. We disagree. A person has constructive possession of an illegal substance "when he has both the power and intent to control its disposition or use, even though he does not have actual possession." *Garcia,* 111 N.C. App. at 640, 433 S.E.2d at 189 (internal quotations omitted). The evidence shows that when Russell wrestled Moore to the ground and shot him three times, he obtained dominion and control over Moore as well as the general area around him, including the cocaine in the kitchen. The fact that Moore was incapacitated before and not after the perfection of the underlying felony of trafficking with a deadly weapon is inconsequential, so long as the two acts—shooting and possession—occur "in a time frame that can be perceived as a single transaction." *See Trull,* 349 N.C. at 449, 509 S.E.2d at 192; *see also State v. Pakulski,* 319 N.C. 562, 571-72, 356 S.E.2d 319, 325-26 (1987) (felony murder still appropriate where the fatal shot occurred prior to the robbery of victim). The evidence in the light most favorable to the State shows that Moore was shot and killed within moments of Russell stepping into the apartment with the gun to complete his drug transaction. This is sufficient for a single transaction.

We have reviewed defendant's argument that the trial court's jury instruction in this case was improper because it allowed him to be convicted of felony murder even if he did not intend to commit the underlying felony. But as discussed earlier, this strict connection is not necessary in concert of action cases. Furthermore, the instructions in this case do not significantly vary from those approved in *Erlewine* and *Barnes. See Barnes,* 345 N.C. at 228, 481 S.E.2d at 68; *Erlewine,* 328 N.C. at 635-37, 403 S.E.2d at 285-86.

We are cognizant of the fact that on 18 August 2003 defendant might have intended nothing more than a drug transaction. And, as a result of his companion's actions, defendant now faces life in prison

without parole. But on a motion to dismiss, our review is complete if in the light most favorable to the State the evidence supports a reasonable inference of defendant's guilt; "it is for the [jurors] to decide whether the facts, taken singly or in combination, satisfy them beyond a reasonable doubt that the defendant is actually guilty." *Trull*, 349 N.C. at 447, 509 S.E.2d at 191. Here, the State met its burden, and the jury determined defendant was guilty beyond a reasonable doubt. We have reviewed defendant's remaining arguments and determined them to be without merit. Accordingly, we find no error in defendant's trial.

No error.

Judges McCULLOUGH and LEVINSON concur.