IN THE COURT OF APPEALS OF NORTH CAROLINA

No. COA22-846

Filed 19 December 2023

Davidson County, No. 19 CRS 53826

STATE OF NORTH CAROLINA

 v.

KEVIN BRIAN MICHAEL, Defendant.

Appeal by defendant from judgment entered 3 February 2022 by Judge Lori I. Hamilton in Davidson County Superior Court. Heard in the Court of Appeals 4 October 2023.

> *Attorney General Joshua H. Stein, by Assistant Attorney General Matthew W. Bream, for the State.*
>
> *Kimberly P. Hoppin, for the Defendant.*

DILLON, Judge.

Defendant Kevin Brian Michael appeals his conviction for possession of a controlled substance. We conclude that Defendant received a fair trial, free of reversible error.

## I. Background

On 11 July 2019, Defendant was driving with two passengers. He was pulled over by Officer Kattner of the Thomasville police for failing to yield.

During the stop, Officer Kattner called another officer, Officer Rowe, to the

scene. At the conclusion of the traffic stop, Officer Kattner returned to Defendant and the passengers their identification cards and told them that they were free to go.

However, based on the nervous behavior of Defendant and the other passengers, Officer Kattner asked Defendant for permission to search the vehicle. Defendant stated that he was on probation and that, therefore, he was required to allow the search. Officer Kattner again asked for Defendant's consent, whereupon Defendant consented.

During the search of the vehicle, Officer Kattner found cocaine and drug paraphernalia. Defendant and the two occupants were arrested.

Defendant filed a motion to suppress the results of the search, which the trial court denied. Defendant renewed his motion prior to jury selection, and the trial court reconfirmed its ruling. However, Defendant did not object during the trial when the State introduced the results of the search into evidence. Defendant was convicted of possession of a controlled substance. He appeals.

On appeal, Defendant argues that the search violated his Fourth Amendment right against unreasonable search and seizure, and further, that the trial court erred when it denied Defendant's motion to dismiss because there was insufficient evidence that he knowingly possessed cocaine.

## II. Analysis

Defendant argues that the trial court erred by not suppressing the evidence of the search and by not granting his motion to dismiss. We address each argument in

turn.

## A. Motion to Suppress

We first consider whether Defendant's Fourth Amendment right was violated by Officer Kattner's search of the vehicle.

Our appellate review is limited to plain error, as Defendant failed to object during the trial to the admission of cocaine found in the vehicle. *State v. Golphin*, 352 N.C. 364, 405, 533 S.E.2d 168, 198 (2000) ("[A] motion *in limine* [is] not sufficient to preserve for appeal the question of admissibility of evidence if the defendant does not object to that evidence at the time it is offered at trial."). Plain error occurs if "absent the error, the jury would have probably reached a different verdict." *State v. Faison*, 330 N.C. 347, 361, 411 S.E.2d 143, 151 (1991).

Both the federal and our state constitutions generally render evidence obtained from a suspect in violation of the Fourth Amendment inadmissible at trial. *Mapp v. Ohio*, 367 U.S. 643 (1961); *State v. McKinney*, 361 N.C. 53, 58, 637 S.E.2d 868, 872 (2006).

"A traffic stop is a seizure even though the purpose of the stop is limited and the resulting detention quite brief." *State v. Barnard*, 362 N.C. 244, 246, 658 S.E.2d 643, 645 (2008). "[R]easonable suspicion is the necessary standard for traffic stops." *State v. Styles*, 362 N.C. 412, 415, 665 S.E.2d 438, 440 (2008). Further, "the duration of a traffic stop must be limited to the length of time that is reasonably necessary to accomplish the mission of the stop." *State v. Bullock*, 370 N.C. 256, 257, 805 S.E.2d

671, 673 (2017).

"An investigation unrelated to the reasons for the traffic stop must not prolong the roadside detention." *State v. Reed*, 373 N.C. 498, 509, __ S.E.2d __, __ (2020). To prolong a detention "beyond the scope of a routine traffic stop" requires that an officer "possess a justification for doing so other than the initial traffic violation that prompted the stop in the first place", which requires "either the driver's consent or a 'reasonable suspicion' that illegal activity is afoot." *Id*. at 510, __ S.E.2d at __.

Here, Officer Kattner testified that as she approached the vehicle . . .

> [t]he backseat passenger was making it a point to avoid any eye contact with me. She was trying to hide her face from me. The front two were -- I could at least see their faces, but they were still nervous upon initial interaction… [t]hey were not wanting to maintain eye contact. They were short in their responses to me…. They were a little fidgety…anxious.

She ran the information of all the vehicle occupants, which revealed that Defendant and one of the passengers did not have any outstanding warrants but that the other passenger had an outstanding warrant for failure to appear in another county.

As Officer Kattner was completing the traffic stop, Officer Rowe arrived on the scene. Officer Kattner approached the vehicle with Officer Rowe to give Defendant a verbal warning and to return identification cards to Defendant and the other passengers. She gave a verbal warning to Defendant and told him and the passengers that they were free to leave. We conclude that the seizure associated with the traffic stop was concluded at this point. *See Reed*, 373 N.C. at 513, __ S.E. at __.

Officer Kattner testified that the vehicle occupants, however, continued to appear "nervous" even though "they knew they weren't getting in trouble for a traffic violation." She reiterated that the traffic stop was completed but then asked Defendant if there was anything illegal in the vehicle, to which he responded, "No." She then proceeded to ask for consent to search the vehicle, to which Defendant replied, "By law, since I am on probation, I cannot tell you no."

Officer Kattner, though, responded by asking Defendant "to confirm yes or no," to which Defendant responded in the affirmative. It was during the search of the vehicle that Officer Kattner found cocaine and other drug paraphernalia.

The State argues that Defendant consented to the search or, otherwise, Officer Kattner had reasonable suspicion to conduct the search.

Defendant, as a probationer, is considered to have given consent to a search where an officer has reasonable suspicion of a crime. Specifically, our General Statutes provide that a probationer agrees to:

> (14) Submit to warrantless searches by a law enforcement officer of the probationer's person and of the probationer's vehicle, *upon a reasonable suspicion* that the probationer is engaged in criminal activity…

N.C. Gen. Stat. § 15A-1343 (2021) (emphasis added).

Defendant, otherwise, may consent to a search absent reasonable suspicion where his consent is given freely and voluntarily. *State v. Little*, 270 N.C. 234, 239, 154 S.E.2d 61, 65 (1967) ("Implicit in the very nature of the term 'consent' is the

requirement of voluntariness. To be voluntary the consent must be 'unequivocal and specific,' and freely and intelligently given."). "[T]he question whether a consent to search was in fact voluntary or was the product of duress or coercion, express or implied, is a question of fact to be determined from the totality of circumstances." *Schneckloth v. Bustamonte*, 412 U.S. 218, 227 (1973). *See also State v. Romano*, 369 N.C. 678, 691, 800 S.E.2d 644, 652-53 (2017) (holding that whether consent to a search was voluntary is a question of fact, not law).

The trial court judge did not articulate in her written order her reasoning for denying Defendant's suppression motion. However, she stated in open court that she was denying the motion based on her conclusion that Officer Kattner had reasonable suspicion to conduct the search:

> The motion to suppress with regard to the basis for -- I'm not going to refer to it as extending the traffic stop, because it's something else. But it's so dangerously close to extending the traffic stop as to be almost indistinguishable -- is denied, because I believe the North Carolina courts have held as long as the officer can articulate a reasonable suspicion of additional criminal activity, they may, at least minimally, extend the stop without getting into constitutionally unreasonable conduct. And I will find from a totality of the circumstances, based just on Kattner's testimony of what she observed, that she had that very minimal reasonable articulable suspicion.

We note that the trial court judge did not articulate any finding as to whether Defendant had otherwise validly consented to the search as an alternative ground for denying Defendant's suppression motion.

We hold that the trial court did not plainly err in allowing the results of the search of Defendant's vehicle into evidence at trial. Even assuming Officer Kattner lacked reasonable suspicion to conduct the search of Defendant's vehicle, we conclude that Defendant has failed to show plain error. Specifically, we note that there was sufficient evidence from which the trial court could have found as fact *at trial* that Defendant voluntarily consented to the search had Defendant objected when the evidence was offered by the State. That is, whether the outcome of the trial "probably" would have been different hinges on whether the trial court probably would not have found *at trial* had Defendant objected that Defendant had voluntarily consented to the search, at least as an alternate ground to uphold her prior ruling. *See State v. Mann*, 355 N.C. 294, 311, 560 S.E.2d 776,787 (2002) (holding that "[t]o establish plain error, defendant must demonstrate not only that there was error, but also had the error not occurred, the outcome of the proceeding probably would have been different.").

## B. Motion to Dismiss

To survive a motion to dismiss, there must be substantial evidence of each essential element of the crime and that the defendant is the perpetrator. *State v. Winkler*, 368 N.C. 572, 574, 780 S.E.2d 824, 826 (2015). Whether the evidence is sufficient to survive a motion to dismiss, it must be considered in the light most favorable to the State; and the State is entitled to every reasonable inference from the evidence. *Id.* at 574, 780 S.E.2d 826.

Here, Defendant contends that the State failed to present sufficient evidence that he constructively possessed the cocaine found in his car, contending that his mere presence "in an automobile in which illicit drugs are found does not, without more, constitute sufficient proof of his possession of such drugs." *State v. Weems*, 31 N.C. App. 569, 571, 230 S.E.2d 193, 194 (1976). However, our Court has likewise recognized that:

> [A]n inference of constructive possession can . . . arise from evidence which tends to show that a defendant was the custodian of the vehicle where the [contraband] was found. In fact, the courts in this State have held consistently that the driver of a borrowed car, like the owner of the car, has the power to control the contents of the car. Moreover, power to control the automobile where [contraband] was found *is sufficient, in and of itself*, to give rise to the inference of knowledge and possession sufficient to go to the jury.

*State v. Mitchell*, 224 N.C. App. 171, 177, 735 S.E.2d 438, 443 (internal citations omitted). *See also State v. Alson*, 193 N.C. App. 712, 716, 668 S.E.2d 383, 386-87 (2008), *aff'd per curiam*, 363 N.C. 367, 677 S.E.2d 455 (2009).

It is undisputed that Defendant was the driver of the vehicle and, therefore, exercised a degree of dominion and control over the vehicle. Additionally, the State also presented evidence of other incriminating circumstances, including the placement of the cocaine in the driver's door, as well as the Defendant's nervous behavior. We conclude that the State's evidence was, therefore, sufficient to survive a motion to dismiss.

III.    Conclusion

For the reasons stated above, we conclude that the trial court did not plainly err by allowing the results of Officer Kattner's search of Defendant's vehicle into evidence.  We further conclude that the trial court did not err by denying Defendant's motion to dismiss the charge of possession of cocaine for insufficiency of the evidence.

NO ERROR.

Judge STADING concurs.

Judge ARROWOOD concurs with separate opinion.

ARROWOOD, Judge, concurring.

I agree with the majority that the trial court did not plainly err because of the evidence indicating defendant voluntarily consented to the search. However, because it appears that the trial court's primary analysis turned on whether the officer had a reasonable suspicion to extend the traffic stop rather than on the defendant's consent to search his car, I believe the trial court's analysis of that issue is incorrect. Thus, I write separately to clarify the issue of reasonable suspicion.

Officer Kattner testified that when she approached defendant's car during the traffic stop, defendant and his passengers were acting "nervous." When asked what made her believe they were nervous, Officer Kattner stated, "They were not wanting to maintain eye contact[,] [t]hey were short in their responses[,]" and "were a little fidgety." Officer Kattner further testified that such signs of nervousness continued after giving defendant a verbal warning for failing to yield.

When ruling on defendant's motion to dismiss, the trial court concluded that reasonable suspicion existed based on these observations alone. However, such a conclusion is sharply at odds with North Carolina law. Specifically, an appearance of nervousness does not give police carte blanche to extend a stop or conduct a search. *See State v. Fields*, 195 N.C. App. 740, 745 (2009) (citing *United States v. Sokolow*, 490 U.S. 1, 9, 104 L. Ed. 2d 1, 11 (1989)) ("In order to preserve an individual's Fourth Amendment rights, it is of the utmost importance that we recognize that the presence of [extreme nervousness] is not, by itself, proof of any illegal conduct and is often quite

consistent with innocent travel."); *see also State v. Myles*, 188 N.C. App. 42, 50 (2008), *aff'd*, 362 N.C. 344 (2008) ("[O]ur Supreme Court has never said nervousness alone is sufficient to determine whether reasonable suspicion exists when looking at the totality of the circumstances.").

For example, in *State v. McClendon*, our Supreme Court explained that "several factors . . . gave rise to reasonable suspicion under the totality of the circumstances." 350 N.C. 630, 637 (1999). Such factors specified by the *McClendon* Court were (1) extreme nervousness, which involved defendant sweating, breathing rapidly, sighing heavily, chuckling nervously when answering questions, and refusing to make eye contact; (2) inconsistent and confusing statements; and (3) the fact that "although defendant seemed unsure of who owned the car, the address of the owner listed seem[ed] to indicate that [defendant and the owner] both lived in the same residence." *Id.* Thus, in *McClendon*, "extreme nervousness" constituted reasonable suspicion only when combined with two other pertinent factors.

Here, unlike in *McClendon*, no factors were present other than Officer Kattner's perception of nervousness. The perceived fidgetiness, eye contact avoidance, and short responses were not separate factors supporting reasonable suspicion; rather, they were physical mannerisms that—when combined—led Officer Kattner to believe defendant and the passengers were nervous. *See State v. Downey*, 251 N.C. App. 829, 834 (2017) (explaining that police testimony that defendant

avoided eye contact supported the trial court's finding that defendant exhibited nervous behavior). Moreover, a general statement that defendant was acting nervous—without specific facts to support such observation like the ones discussed here—does not constitute a factor supporting reasonable suspicion. *See United States v. Crawford*, 891 F.2d 680, 682 n.4 (8th Cir. 1989). ("The statement that [defendant] appeared nervous . . . is a mere rephrasing of the other evidence, offered in an attempt to enhance the value of that evidence."). Accordingly, Officer Kattner's observations were inadequate to support a finding of reasonable suspicion.

It is also important to point out that nothing in the record suggests that Officer Kattner had prior knowledge of defendant or his passengers before the traffic stop. I thus find it hard to understand how Officer Kattner would know whether they were indeed nervous or simply behaving normally. Without such prior knowledge, Officer Kattner's observations likely constitute subjective and "unparticularized suspicion." *See State v. Watkins*, 337 N.C. 437, 442 (1994) (quoting *Brown v. Texas*, 443 U.S. 47, 51, 61 L. Ed. 2d 357, 362 (1979)) (stating that reasonable suspicion must be " 'based on objective facts, that the individual is involved in criminal activity.' ").